UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

ERICA MAITLAND,

                 Plaintiff,

                     v.

TARGET CORP. d/b/a TARGET,

                 Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-3892 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Erica Maitland commenced this action on September 23, 2019, in the Supreme

Court of New York, Kings County, against Defendant Target Corporation, doing business as

Target.  (Compl., annexed to Not. of Removal as Ex. A, Docket Entry No. 2-1.)  Defendant

removed the proceeding to the Eastern District of New York on August 24, 2020, based on

diversity jurisdiction under 28 U.S.C. § 1332.  (Not. of Removal, Docket Entry No. 2.)  Plaintiff

seeks damages for injuries she sustained when a shelf fell on her in the Target store located at

139 Flatbush Avenue, Brooklyn, New York.[1]  Plaintiff alleges that Defendant's negligence

caused the shelf to fall on her and injure her.  (Compl. ¶¶ 2–7.)

        Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Plaintiff opposes the motion.[2]  For the reasons set forth below, the Court

grants Defendant's motion for summary judgment.

---

[1]  (Def.'s R. 56.1 Stmt. ("Def.'s 56.1") ¶ 1, Docket Entry No. 28; Pl.'s R. 56.1 Stmt. ("Pl.'s 56.1") ¶¶ 1–4, Docket Entry No. 24.)

[2]  (Def.'s Not. of Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 21; Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Docket Entry No. 21-2; Def.'s

I.   **Background**

a.   **The December 22, 2016 incident**

At or around 11:30 PM on December 22, 2016, Plaintiff entered a Target store located at

139 Flatbush Avenue, Brooklyn, New York.[3]  (Pl.'s 56.1 ¶¶ 1–2.)  Plaintiff has been in a

wheelchair since approximately 1994 because of a motor vehicle accident in March of 1986,

(Dep. of Erica Maitland ("Maitland Dep.") 26:22–28:19, annexed to the Decl. of Michael N.

David as Ex. B, Docket Entry Nos. 23-2, 23-4; Def.'s 56.1 ¶ 5), and was utilizing her non-

motorized wheelchair to get around the store, (Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 5).  Plaintiff

proceeded directly to the toy department to look at and possibly purchase toys for family

members.  (Maitland Dep. 71:15–72:19; Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 2.)

After Plaintiff entered the toy department, she remained stationary in her wheelchair not

looking at anything in particular for "three to five minutes."  (Maitland Dep. 155:14–156:10;

Def.'s 56.1 ¶¶ 10, 11.)  While Plaintiff was stationary, a "big metal shelf" from an unknown

location fell onto her lap, hitting her leg and causing her pain.  (Maitland Dep. 38:12–23; Def.'s

56.1 ¶¶ 12, 14; Pl.'s 56.1 ¶ 6.)  Plaintiff did not recall the length, shape, or width of the shelf, nor

did she recall seeing the shelf before the incident.  (Maitland Dep. 157:16–158:25; Def.'s 56.1

¶¶ 15, 29, 32; Pl.'s R. 56.1 Counter-Stmt. ¶¶ 15, 29, 32 ("Pl.'s 56.1 Counter-Stmt."), Docket

Entry No. 29.)  Plaintiff also did not recall any details about the positioning of the shelf or the

conditions of the surrounding area, such as whether the shelf was in contact with the floor prior

to the incident, whether the shelf had previously been leaning against something or had been

---

Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 30-1; Pl.'s Mem. of
Law in Opp'n to Def.'s Mot. ("Pl.'s Mem."), Docket Entry No. 25.)

[3]  Unless otherwise indicated, the facts are undisputed.

attached to something, what portion of the shelf first made contact with her body, or the approximate distance between her wheelchair and any of the shelves in the area when the incident occurred.  (Def.'s 56.1 ¶¶ 20–28, 38, 41; Pl.'s 56.1 Counter-Stmt. ¶¶ 20–28, 38, 41.)  In addition, Plaintiff did not recall from what direction the shelf fell, the speed at which the shelf struck her, whether her feet made contact with the shelf prior to the incident, or how long the shelf remained on her lap.  (Def.'s 56.1 ¶¶ 36–43; Pl.'s 56.1 Counter-Stmt. ¶¶ 36–43.)

Another customer removed the shelf from Plaintiff's lap after the incident.  (Def.'s 56.1 ¶ 44; Pl.'s 56.1 Counter-Stmt. ¶ 44.)  Plaintiff did not know whether the customer ever touched, moved, or made contact with the shelf prior to the incident or where the other customer was located three to five minutes prior to the incident.  (Def.'s 56.1 ¶¶ 45, 46; Pl.'s 56.1 Counter-Stmt. ¶¶ 45, 46.)  A female Target employee arrived on the scene of the incident and provided Plaintiff with a "Guest Incident Report."  (Def.'s 56.1 ¶¶ 47, 48; Pl.'s 56.1 Counter-Stmt. ¶¶ 47, 48.)  Plaintiff did not observe that any of the surrounding shelves were empty or that any individual shelves were missing from the shelving fixtures after the incident.  (Def.'s 56.1 ¶ 60, 61; Pl.'s 56.1 Counter-Stmt. ¶¶ 60, 61.)  Plaintiff did not recall seeing any Target employees in the aisle prior to the incident or observe any work being performed to the shelves.  (Def.'s 56.1 ¶¶ 67, 68; Pl.'s 56.1 Counter-Stmt. ¶¶ 67, 68.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th

3

at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir.

2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir.

2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The role of the court "is not

to resolve disputed questions of fact but only to determine whether, as to any material issue, a

genuine factual dispute exists."  *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021)

(quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  A genuine issue of fact

exists when there is sufficient "evidence on which the jury could reasonably find for the

[nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "mere

existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The

court's function is to decide whether, "after resolving all ambiguities and drawing all inferences

in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant."  *Miller v.

N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing

*Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127,

129 (2d Cir. 2013)).

      **b.   Plaintiff's negligence claim**

      Defendant argues that Plaintiff "d[oes] not know what caused the shelf to fall" and

therefore cannot "demonstrate notice of any defect imputable to [Defendant]."  (Def.'s Mem.

1–2.)  In addition, Defendant argues that Plaintiff's opposition to its motion "is premised upon an

incorrect legal standard," since she improperly relies on state procedural law and therefore "is

unable . . . to satisfy her requisite burden to establish proof of notice."  (Def.'s Reply 6.)

Defendant also argues that Plaintiff fails to satisfy the elements of res ipsa loquitur.  (Def.'s

Mem. 10–12.)

Plaintiff argues that Defendant fails to "offer some evidence as to when the area in question was last cleaned or inspected relative to the time when [Plaintiff] was injured" in order to "meet its prima facie burden on the issue of lack of constructive notice" and therefore is not entitled to summary judgment. (Pl.'s Mem. 18–19.) Plaintiff also argues that she has a viable negligence claim based on the doctrine of res ipsa loquitur. (*Id.* at 10–17.)

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)); *see also Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach." (citing *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985))); *Johnson v. AFNI, Inc.*, No. 22-CV-2930, 2023 WL 2970919, at *2 (S.D.N.Y. Apr. 15, 2023) ("To state a claim for negligence under New York law, a plaintiff 'must establish the existence of a legal duty, a breach of that duty, proximate causation, and damages.'" (quoting *MVB Collision, Inc. v. Allstate Ins. Co.*, 13 N.Y.S.3d 137, 138 (App. Div. 2015))).

"To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate 'that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.'" *Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (quoting *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (App. Div. 2007)); *see also Borley*, 22 F.4th at 79 ("In slip-and-fall cases, . . . to show a

5

'breach of duty,' a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness."); *Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013) ("Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." (quoting *Taylor v. United States*, 121 F.3d 86, 89–90 (2d Cir. 1997))); *Burden v. Wal-Mart Stores E., LP*, No. 17-CV-1289, 2018 WL 4680025, at *4 (S.D.N.Y. Sept. 28, 2018) (observing that in a premises liability case "a plaintiff must first show 'the existence of a dangerous or defective condition' that caused the accident," and then must show "that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it" (first quoting *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016); and then quoting *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017))).

Construing the evidence in Plaintiff's favor, the Court grants Defendant's motion for summary judgment because there is no genuine dispute of fact that Defendant did not create the hazardous condition, or have actual or constructive notice of the condition, and the doctrine of res ipsa loquitur is inapplicable to the facts of this case.

### i.  Applicable summary judgment standard

Defendant argues that Plaintiff's opposition "is premised upon an incorrect legal standard," that she relies on state court cases to support her argument rather than "the applicable

[f]ederal [c]ourt jurisprudence," and therefore she "is unable on these facts to satisfy her

requisite burden to establish proof of notice."[4]  (Def.'s Reply 6.)

Plaintiff argues that "[t]o meet its prima facie burden on the issue of lack of constructive

notice of a defective premises condition, a defendant must offer some evidence as to when the

area in question was last cleaned or inspected relative to the time when the plaintiff was injured,"

and because Defendant fails to proffer such evidence, the Court must deny Defendant's motion.

(Pl.'s Mem. 18–19.)

Because this action was removed from New York state court on the basis of diversity of

citizenship between the parties, Plaintiff's claims are governed by New York substantive law and

federal procedural law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Sarkees v. E. I.*

*Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case,

state law, here New York's, applies to substantive issues, and federal law applies to procedural

issues.").  The moving party's burden of proof on a summary judgment motion is procedural, and

under the distinction created by *Erie R. Co. v. Tompkins* and its progeny, is subject to federal

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Lyman v. PetSmart, Inc.*, No. 16-

CV-4627, 2018 WL 4538908, at *2–3 (S.D.N.Y. Sept. 21, 2018) ("New York state law governs

the substantive slip and fall claim.  However, federal law applies to procedural aspects of the

claim." (footnote omitted)).  Thus, the federal summary judgment standard applies to

Defendant's motion for summary judgment.  *See, e.g.*, *Tenay*, 281 F. App'x at 13 (applying the

federal summary judgment standard to a New York slip and fall case); *Lyman*, 2018 WL

4538908, at *3 (same); *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578,

---

[4]  The parties do not dispute that New York law controls as to the elements of Plaintiff's negligence claim but dispute whether New York state law or federal procedural law determines the summary judgment standard for a premises liability case.

at *3 n.5 (E.D.N.Y. June 17, 2016) (same).  Accordingly, as the moving party, Defendant has the

initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S.

at 323; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir.

2017) (noting that a "party moving for summary judgment may satisfy his burden . . . by

demonstrating that the non-moving party's evidence is insufficient to establish an essential

element of the non-moving party's claim" (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir.

1988))).  Once Defendant meets this burden, Plaintiff must identify specific facts and affirmative

evidence that contradict those offered by Defendant to demonstrate there is a genuine issue for

trial.  *Celotex*, 477 U.S. at 323–24; *see also McKinney v. City of Middletown*, 49 F.4th 730, 738

(2d Cir. 2022) ("If the moving party carries its burden, the nonmoving party must 'come forward

with evidence that would be sufficient to support a jury verdict in its favor.'" (quoting *Burt Rigid*

*Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002))); *Strass*, 2016 WL

3448578, at *3 ("Under the federal summary judgment standard, [d]efendant is not required to

put forth evidence affirmatively demonstrating its lack of knowledge or its constructive

knowledge; rather, it need only show that [p]laintiffs will not be able to prove at trial that

[d]efendant had such knowledge.").

### ii.   Creation of the condition

Defendant argues that Plaintiff admits she "d[oes] not know what caused the shelf to fall"

and therefore cannot "demonstrate notice of any defect imputable to [Defendant]."  (Def.'s Mem.

1–2.)

Plaintiff concedes that she does not know what caused the shelf to hit her, (Def.'s 56.1

¶ 13; Pl.'s 56.1 Counter-Stmt. ¶ 13), but argues that Defendant has the initial burden of making a

prima facie showing that it did not create the hazardous condition, (Pl.'s Mem. 18–19).

8

"In the context of a summary judgment motion, Plaintiff's 'burden . . . is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition.'" *Strass*, 2016 WL 3448578, at \*4 (alteration in original) (quoting *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014)); *see also Tenay*, 281 F. App'x at 13 (noting that "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 [of the Federal Rules of Civil Procedure] will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim," (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988))).  "To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant." *Lyman*, 2018 WL 4538908, at \*5 (quoting *Vasquez*, 2016 WL 315879, at \*7). "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that [d]efendant created the condition through affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker*, 2017 WL 568761, at \*5 (second alteration in original) (internal quotation marks and citations omitted).

It is undisputed that Plaintiff did not know "what caused the shelf to strike her." (Def.'s 56.1 ¶ 13; Pl.'s 56.1 Counter-Stmt. ¶ 13.)  Plaintiff does not point to any other evidence indicating that Defendant or its employees created the condition that caused the shelf to fall on Plaintiff.  Thus, there is no evidence that Defendant created the hazardous condition.  *See Tenay*, 281 F. App'x at 13 (holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim in granting" summary judgment, as "there is no evidence that the [defendant] created the wet floor condition

that caused [the plaintiff's] fall"); *Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-CV-2108, 2021 WL 2742622, at *5 (S.D.N.Y. June 30, 2021) (granting summary judgment to defendant where there was "no evidence showing how the fruit . . . ended up on the floor"); *Strass*, 2016 WL 3448578, at *4 (granting defendant summary judgment on the issue of creation of a hazardous condition where plaintiffs failed to point to evidence establishing that defendant store created the spill).

### iii.  Actual notice

Defendant argues that "it is crystal clear that [Defendant] did not have actual notice of the condition that [P]laintiff claims caused her accident."  (Def.'s Mem. 6–7.)

Plaintiff does not address actual notice in her opposition but argues that "[a]t the very least there was constructive notice." (Pl.'s Mem. 7.)

"To show actual notice, the plaintiff must 'prove that the defendants were, in fact, aware of the dangerous condition.'"  *Strass*, 2016 WL 3448578, at *4 (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998)); *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.").

Plaintiff proffers no evidence that Defendant or Defendant's employees saw a defect in the shelf prior to it falling on Plaintiff.  Plaintiff has not pointed to any evidence that Defendant received complaints about defective shelves prior to her accident.  In fact, Mickela Ivey, a senior executive at the Target store, testified that she was not aware of any accidents or complaints involving toy department shelves at that store during the year prior to Plaintiff's incident and also had not heard any reports of toy department shelves coming off their fixtures during the year prior to the incident.  (Def.'s 56.1 ¶¶ 75–77; Pl.'s 56.1 Counter-Stmt. ¶¶ 75–77.)  In addition,

10

Plaintiff herself did not see the shelf or notice anything defective about it before it struck her. (Def.'s 56.1 ¶¶ 29, 32; Pl.'s 56.1 Counter-Stmt. ¶¶ 29, 32.)  There is no evidence indicating that Defendant had actual notice of the condition before Plaintiff's accident.  Because there is no evidence that Defendant was actually aware of a defect in the shelf, Plaintiff fails to show that Defendant had actual notice.  *See Leandro*, 2021 WL 2742622, at *8 (granting summary judgment to defendants where there was no evidence that defendants were aware of the dangerous condition before the accident); *Strass*, 2016 WL 3448578, at *4 (granting summary judgment where "[a]side from conclusory references to 'actual notice,' [p]laintiffs d[id] not identify any evidence that would support a finding that [defendant] was, in fact, aware of the condition that allegedly caused [plaintiff's] fall").

### iv.   Constructive notice

Defendant argues that Plaintiff fails to show that it had constructive notice for several reasons.  First, Plaintiff cannot "demonstrate that the purported problem with the shelf at issue . . . existed for a long enough period of time in order to impute liability upon [Defendant] based upon constructive notice."  (Def.'s Mem. 7.)  Second, Plaintiff has conceded that she did not know when any employees were last in the aisle where the accident occurred, did not know the location of the shelf prior to the occurrence, did not know where the shelf came from or how it had been situated before it struck her, and "did not observe any shelves in the aisle where her incident occurred which appeared to have been out of place . . . or in a place where they should not have been located," and there is no evidence in the record to indicate "that the alleged issue with the subject shelf was . . . present for a sufficient time so as to place [Defendant] on constructive notice thereof."  (*Id.* 7–8.)  Third, Ivey testified that she was not aware of any instances of a shelf in the toy department of the store coming off its gondola or of any

maintenance being performed on shelves or gondolas in the relevant aisle within the year prior to Plaintiff's incident. (*Id.* at 9.)  Fourth, based on the lack of evidence as to the cause and circumstances of the incident, there is nothing in the record to indicate that Defendant had constructive notice of any purported dangerous condition — and therefore no indication in the record that it breached its duty to keep its premises safe. (*Id.*)

Plaintiff argues that Defendant cannot claim lack of constructive notice because it failed to inspect and maintain its premises. (Pl.'s Mem. 18–19.)  In support, Plaintiff argues that Defendant "never inspected the shelves where the accident occurred," "had no rules regarding inspection of the shelves," and "never maintained the shelves or gondolas" where the accident occurred, (*id.* at 19), and therefore fails to "meet its prima facie burden on the issue of lack of constructive notice of a defective premises condition," (*id.* at 18).[5]

"To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'"  *Nussbaum*, 603 F. App'x at 12 (quoting *Lemonda v.*

---

[5]  Plaintiff mischaracterizes the testimony proffered by Defendant's witness, Mickela Ivey.  Plaintiff argues that the witness testified that Defendant "never inspected the shelves where the accident occurred," had "no rules regarding inspection of the shelves," and "never inspected or tested the gondolas" that hold up the shelves. (*Id.* at 19.)  In fact, Ivey testified that she did not know if maintenance or inspections were performed on the shelves, that the shelving in the toy department is set according to a "planogram," which determines how many toys go on each shelf, and she was not aware of any accidents or complaints from that Target store regarding the shelves. (*See, e.g.*, Dep. of Mickela Ivey ("Ivey Dep.") 10:7–14, 20:23–21:13, 22:6–19, 26:10–20, 38:6–39:12, annexed to Def.'s Mot. as Ex. D, Docket Entry No. 21-8.)  Thus, the limited evidence available to the Court regarding what maintenance and testing Defendant performed on the shelves indicates that (1) at least some minimal testing and inspection occurred pursuant to a "planogram" and (2) there is no indication of previous incidents involving defective shelving that could have put Defendant on notice.  Moreover, because Defendant need not demonstrate that it performed regular testing or maintenance, and may satisfy its burden by demonstrating that Plaintiff's evidence is insufficient to establish that it received notice, *see Nick's Garage*, 875 F.3d at 11, Ivey's testimony is not dispositive.

*Sutton*, 702 N.Y.S.2d 275, 276 (App. Div. 2000) (affirming a district court's grant of summary judgment without reaching the question of whether the hazard existed for a sufficient length of time because the hazard was determined not to be visible and apparent)); *Lionel*, 44 F. Supp. 3d at 323–24 (granting summary judgment where the plaintiff could only prove that plastic lid was visible and apparent, but could not prove that it existed for a sufficient length of time). The plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that the spill was both visible and apparent and that it existed for a sufficient length of time prior to the accident. *See Tenay*, 281 F. App'x at 13 (holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim" in granting summary judgment). A plaintiff cannot simply prove that the defendant was "generally aware of the existence of the dangerous condition"; instead, she must prove that the defendant had "notice of the 'particular condition' at issue." *Union Mut. Fire Ins. Co.*, 64 F.4th at 445 (quoting *Borley*, 22 F.4th at 78).

The record does not contain facts from which a reasonable jury could find that Defendant had constructive notice of a defective condition. Plaintiff testified that she did not recall seeing the shelf before the incident. (Def.'s 56.1 ¶¶ 29, 32; Pl.'s 56.1 Counter-Stmt. ¶¶ 29, 32.) She further testified that she did not recall any details about the positioning of the shelf or the conditions of the surrounding area and did not recall from what direction the shelf came, the speed at which the shelf struck her, or whether her feet made contact with the shelf prior to the incident. (Def.'s 56.1 ¶¶ 20–28, 36–43; Pl.'s 56.1 Counter-Stmt. ¶¶ 20–28, 36–43.) Plaintiff concedes that she did not see the shelf prior to the fall, offers no theory as to how the shelf came to fall on her, and points to no evidence in the record to otherwise indicate that Defendant had

notice of a dangerous condition with respect to the shelf.  There are no facts in the record from which a reasonable jury could find that Defendant had constructive notice of the danger posed by the shelf, and therefore there is no triable issue of fact as to this element of Plaintiff's negligence claim.

Plaintiff's argument that Defendant cannot claim it lacked constructive notice because it failed to demonstrate that it appropriately inspected and maintained its premises misapplies Defendant's burden.  Because Plaintiff's claim is being adjudicated in federal court, Defendant has no prima facie burden to offer evidence as to when the area in question was last cleaned or inspected relative to the time when Plaintiff was injured, and Defendant's failure to provide such evidence therefore has no effect on the outcome of its summary judgment motion.  *See Leandro*, 2021 WL 2742622, at *10 (finding no constructive notice where "[p]laintiff offers no evidence regarding when the spill took place"); *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) (granting defendant summary judgment on constructive notice where there was "simply no evidence . . . as to how long" the debris was on the floor).

The record contains no evidence to indicate that Defendant had constructive notice of a dangerous condition.  Because there is no evidence in the record that Defendant breached its duty to maintain safe premises, and breach of duty is an "essential element" of a negligence claim, unless the theory of res ipsa loquitur applies, Defendant is entitled to summary judgment.  *Nick's Garage, Inc.*, 875 F.3d at 114 (quoting *Farid*, 850 F.2d at 924).

### v. Res ipsa loquitur

Defendant argues that the doctrine of res ipsa loquitur — the doctrine which permits a court to infer the negligence of a defendant who had exclusive control of an instrumentality — is inapplicable since Defendant "did not have exclusive control of the instrumentality which

allegedly caused the accident, i.e., the shelf at issue." (Def.'s Mem. 10.) In support, Defendant argues that because Plaintiff cannot identify the initial location of the shelf, how it was positioned, or "if any customer or non-Target employee came into contact with the shelf at issue prior to the incident," Plaintiff cannot "challenge the significant possibility that someone other than a Target employee came into contact with the . . . shelf." (*Id.* at 11–12.)

Plaintiff argues that res ipsa loquitur's "exclusivity" requirement does not mean that "the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at [D]efendant's door." (Pl.'s Mem. 16 (quoting *Dermatossian v. N.Y.C. Tr. Auth.*, 67 N.Y.2d 219, 227 (1986))). Plaintiff relies on *Pannell v. Target*, to support the argument that "the exclusivity element is met when customers do not have reasonable access to the goods or are not expected to handle it." (*Id.* at 12 (quoting No. 11-CV-7326, 2013 WL 2247013 (S.D.N.Y. May 22, 2013))).

Res ipsa loquitur is an evidentiary doctrine that permits "an inference of negligence [to] be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 n.1 (2d Cir. 2013) (quoting *Dermatossian*, 67 N.Y.2d at 226). The doctrine affords plaintiffs the opportunity "to establish a prima facie case of negligence without proving elements usually necessary to state a negligence claim." *Am. Ins. Co. v. Kartheiser*, No. 17-CV-5545, 2020 WL 5764374, at *5 (S.D.N.Y. Sept. 28, 2020). Traditionally, under New York law, a case may be submitted to the jury on the theory of res ipsa loquitur if the following conditions are present: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to

15

any voluntary action or contribution on the part of the plaintiff." *Union Mut. Fire Ins. Co.*, 64 F.4th at 448 (quoting *Morejon v. Rais Constr. Co.*, 7 N.Y.3d 203, 209 (2006)).  However, more recently, "New York courts have in practice eliminated exclusive control as an absolute requirement, and permitted plaintiffs to show, sufficiently, that other possible controllers were not the negligent cause." *Id.*; *see also Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 159 (2d Cir. 2003) ("[E]xclusive control is not a rigid concept; rather, it is 'subordinated to its general purpose, that of indicating that it *probably* was the defendant's negligence which caused the accident.'" (quoting *Corcoran v. Banner Super Mkt., Inc.*, 19 N.Y.2d 425, 432 (1967)))).  The exclusive control requirement therefore "must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it," and while it need not "eliminate within reason all explanations for the injury other than the defendant's negligence," it must demonstrate "that their likelihood [is] so reduced that the greater probability lies at defendant's door."  *Coale v. Metro-N. Commuter R.R.*, 621 F. App'x 13, 16 (2d Cir. 2015) (quoting *Dermatossian*, 67 N.Y.2d at 227).

The doctrine of res ipsa loquitur is inapplicable since the record does not indicate that Defendant had "exclusive control" of the shelf, or, under the more lenient standard, that there is a "greater probability" that Defendant's negligence caused the incident rather than some other explanation.  *Coale*, 621 F. App'x at 16.  First, as discussed above, Plaintiff fails to identify the cause of the accident and therefore leaves the Court with no basis on which to assess whether the incident was more likely to have been caused by Defendant's negligence or some other cause.  Defendant, by contrast, argues that there is a "real probability that a third party had access to the . . . shelf," including the customer who removed the shelf from Plaintiff's lap. (Def.'s Reply 3.)  Second, absent specific factual circumstances that reduce the likelihood of third-party access,

courts generally decline to find "exclusive control" where premises are heavily trafficked by the public.  *See, e.g.*, *Union Mut. Fire Ins. Co.*, 64 F.4th at 448 (finding that "[t]he res ipsa loquitur argument therefore [could not] be made" where plaintiff failed to show that defendant had exclusive control of the power strip that caused a fire); *Z.C. v. Wal-Mart Stores, Inc.*, 574 F. App'x 52, 54 (2d Cir. 2014) (finding that "res ipsa loquitur is inapplicable here because the accident was not caused by an instrumentality or agency within defendants' exclusive control" (internal quotation marks omitted)); *St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 303 (2d Cir. 1990) ("As numerous cases have shown, it is not enough to prove that the defendant had control if there is sufficient evidence that a third party also had access to the instrumentality that caused the injury."); *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 350 (E.D.N.Y. 2021) (finding that where there could not "be any serious dispute that the public had 'unfettered access' to an escalator . . . in the Queens Center Mall," the record did not "permit the conclusion that the instrumentality that caused [p]laintiff's alleged accident was in [d]efendants' exclusive control"); *Fontanelli v. Price Chopper Operating Co.*, 931 N.Y.S.2d 800, 803 (App. Div. 2011) (finding summary judgment appropriate where "it was unrefuted that anyone entering the store had unfettered access to the water bottles" that fell on plaintiff and injured her and plaintiff "failed to show that the bottles were within defendants' exclusive control"); *Ruggiero v. Waldbaums Supermarkets, Inc.*, 661 N.Y.S.2d 37, 39 (App. Div. 1997) (affirming the lower court's grant of summary judgment on the basis that "the element of exclusive control [was] lacking" since "the supermarket had been open for approximately [ten] hours before the accident occurred" and the juice cans that fell on the plaintiff might "have been dislodged by one or more prior shoppers").  The parties do not dispute that the incident occurred in the toy section of the Target store located at 139 Flatbush Avenue, Brooklyn, New York on December 22, 2016,

17

around 11:30 PM.  (Def.'s 56.1 ¶¶ 1, 2; Pl.'s 56.1 Counter-Stmt. ¶¶ 1, 2.)  Given that the incident

occurred in the toy department of a Target store three days before Christmas and that the store

had presumably been open for at least fifteen hours prior to the incident, (Ivey Dep. 11:25–12:3

(stating that the Target store opened at 8 AM)), the public had access to the premises prior to the

incident.  *See Looney*, 588 F. Supp. 3d at 350.  Plaintiff has not shown, and the record provides

no basis from which a reasonable jury could conclude that "other possible controllers were not

the negligent cause" of the incident.  *Union Mut. Fire Ins. Co.*, 64 F.4th at 448.  Plaintiff has

therefore not met res ipsa loquitur's "exclusive control" prong, and the doctrine may not be

applied to this case.

Plaintiff's reliance on *Pannell* to argue that res ipsa loquitur applies to this case is

misplaced.  In *Pannell*, six furniture boxes fell on the plaintiff while she was shopping at a

Target store.  2013 WL 2247013, at *1.  The plaintiff argued that Target negligently maintained

the shelf, causing plaintiff's accident.  *Id.*  Target moved for summary judgment on the basis that

plaintiff had not satisfied res ipsa loquitur's "exclusive control" requirement since its customers

"freely peruse the aisles, take merchandise from shelves, examine it and replace it."  *Id.* at *3.

The district court found that since the boxes that fell on the plaintiff "were approximately three

feet tall by a foot and a half wide, weighed forty-five pounds each, and were placed on a shelf

that was approximately five feet high," there was a question of fact as to whether "customers in

need of reaching unwieldy boxes on high shelves would likely call for the assistance of

employees or would do it themselves."  *Id.* at *4.  The court further noted that both the plaintiff

and a Target employee noticed that one of the brackets supporting the shelf was out of place.  *Id.*

at *1.  Under those circumstances, the court found that "[t]he facts permit the inference that

customers did not typically handle [the shelf's support bracket]," which was located at the back

of the shelf, and that there were no other facts suggesting "that customers were the proximate cause of the shelf's collapse." *Id.* at *4. The court noted that res ipsa loquitur's exclusivity element may be met "when customers do not have reasonable access to the goods or are not expected to handle it," and concluded that because the record gave no reason to conclude that anyone other than Target caused the injury, summary judgment for defendant was inappropriate. *Id.* at *3–5.

Unlike the plaintiff in *Pannell*, who specifically described the size, location, and collapse of the shelf, Plaintiff provides no details about the shelf or how it came to land in her lap. Plaintiff testified that she "[did] not know where the shelf came from," (Pl.'s 56.1 ¶ 9), did not know what caused it to strike her, and could not provide any description of the shelf's shape, size, weight, or appearance, (Def.'s 56.1 ¶¶ 13–18; Pl.'s 56.1 Counter-Stmt. ¶¶ 13–18). In *Pannell*, the plaintiff's mother testified that the shelf's bracket was "out of the hole and wobbling" and a Target employee also noticed the faulty bracket. 2013 WL 2247013, at *5. The court in *Pannell* therefore concluded that "[o]rdinary experience would suggest that the boxes fell when an unsecured shelf gave way" and therefore there was a question of fact as to whether the defendant had exclusive control of the defective bracket. *Id.* Unlike in *Pannell*, Plaintiff offers no theory as to how the shelf came to land in her lap, nor are there facts in the record to indicate that the shelf was positioned in such a way that customers would be unlikely to handle or jostle it.[6] Because the record contains no facts that might suggest that customers "[did] not

---

[6] Other courts that have found that defendants exercised "exclusive control" over heavily trafficked premises have done so when the record contained evidence that members of the public would have been unlikely to have come in contact with the dangerous instrumentality. *See, e.g.*, *Fields v. King Kullen Grocery Co.*, 813 N.Y.S.2d 495, 513 (App. Div. 2006) (finding a question of fact as to "exclusive control" where a barbeque grill placed on a shelf six-and-a-half feet above the floor fell and struck the plaintiff); *Sanchez v. Home Depot*, No. 96-CV-748, 1998 WL

have reasonable access" to the shelf or would "not [be] expected to handle it," *id.* at 3, this case is distinguishable from *Pannell*.

Accordingly, Plaintiff has not demonstrated that Defendant had "exclusive control" of the shelf and the doctrine of res ipsa loquitur is therefore inapplicable to the facts of this case.

### III. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment. The Clerk of Court is directed to close this case.

Dated: September 26, 2023
       Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge

---

812571, at *3 (E.D.N.Y. May 26, 1998) (finding a question of fact as to "exclusive control" where a twelve pound sink fell from an eight foot shelf injuring plaintiff because the court "[could not] find as a matter of law that it is at least equally probable that the negligence was that of someone other than the defendant"). However, as discussed, the record in this case contains no facts from which the Court might "fairly rule out the chance that the [incident] was caused by some agency other than defendant's negligence." *Dermatossian*, 67 N.Y.2d at 228. The doctrine of res ipsa loquitur is therefore inapplicable to the facts of this case.